**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | |
|---|---|
| LEGAL EAGLE, LLC<br>1050 Connecticut Avenue, NW<br>Suite 5038<br>Washington, DC  20036,<br><br>and<br><br>NATIONAL SECURITY COUNSELORS,<br>INC.<br>1451 Rockville Pike<br>Suite 250<br>Rockville, MD  20852<br>Montgomery County<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL ARCHIVES AND<br>RECORDS ADMINISTRATION<br>8601 Adelphi Road<br>College Park, MD  20740,<br><br>Defendant. | Civil Action No. 8:26-cv-01214 |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

Plaintiffs Legal Eagle, LLC and National Security Counselors, Inc. bring this action against Defendant National Archives and Records Administration pursuant to the Freedom of Information Act, 5 U.S.C. § 552, *et seq.*, *as amended* ("FOIA"), the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and the All Writs Act, 28 U.S.C. § 1651.

## JURISDICTION

1.     This Court has both subject matter jurisdiction over this action and personal jurisdiction over Defendant pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

## VENUE

2.      Venue is appropriate under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391.

## PARTIES

3.      Plaintiff Legal Eagle, LLC ("Legal Eagle") is a business headquartered in the District of Columbia. Legal Eagle runs the LegalEagle YouTube channel (https://www.youtube.com/legaleagle), which is the most popular long form YouTube channel focused on legal issues—as well as one of the fastest growing educational channels in the world—with more than three million subscribers, fifteen million monthly views, and nearly one billion total video views. Legal Eagle is accordingly a representative of the news media within the meaning of 5 U.S.C. § 552(a)(4)(A).

4.      Plaintiff National Security Counselors, Inc. ("NSC") is a non-profit public interest law firm incorporated in 2010 in the Commonwealth of Virginia as a tax-exempt charitable organization, which is currently headquartered in the state of Maryland. NSC uses research, litigation, and communications to inform the public about legal issues involving the federal Government and has the ability to disseminate information on a wide scale. As part of its research, NSC uses government records made available to it under FOIA as well as Government records that agencies have made available to the general public.

5.      Defendant National Archives and Records Administration ("NARA") is an agency within the meaning of 5 U.S.C. § 552(f) and is in possession and/or control of the records requested by Plaintiffs which are the subject of this action.

6.      The Donald J. Trump Presidential Library ("Trump Library") is a NARA component.

**BACKGROUND**

*PART I: TRUMP I PRESIDENTIAL RECORDS AND FOIA*

7.    According to the Presidential Records Act ("PRA"), 44 U.S.C. § 2204, all Presidential records—with limited exceptions—become subject to FOIA five years after the end of the President's last consecutive term.

8.    President Donald Trump's first term ended on 20 January 2021.

9.    Accordingly, all Presidential records from President Trump's first term became subject to FOIA on 20 January 2026.

10.    FOIA requests for Presidential records are submitted to the appropriate Presidential Library.

11.    FOIA requests for Presidential records from President Trump's first term are submitted to the Donald J. Trump Presidential Library and may be submitted by online form, email, or United States Postal Service.

12.    All FOIA requests in this Complaint pertain to matters about national security classification or security clearances from President Trump's first term.

*PART II: MANDATORY DECLASSIFICATION REVIEW AND ISCAP*

13.    Executive Order 13,526 ("E.O. 13,526" or "the Order") governs the national security classification system.

14.    Section 3.5 of the Order establishes a process called Mandatory Declassification Review ("MDR"), by which a person may request that a classified document be declassified.

15.    The MDR process involves filing a request with an agency, then, if necessary, filing an administrative appeal with that agency, then, if necessary, filing a final appeal with the Interagency Security Classification Appeals Panel ("ISCAP" or "the Panel").

16.    ISCAP is established by Section 5.3 of the Order and performs multiple functions. 32 C.F.R. § 2003.3.

17.    "The Panel is established for the sole purpose of advising and assisting the President in the discharge of his constitutional and discretionary authority to protect the national security of the United States." Exec. Order. 13,526 § 5.3(e). As a result, ISCAP records are Presidential records under the PRA. 32 C.F.R. § 2003.8(b)-(c).

18.    The Director of the Information Security Oversight Office ("ISOO")—a NARA official—serves as the ISCAP Executive Secretary and, along with ISOO staff, provides program and administrative support for the Panel. *Id.* § 5.3(a)(4); 32 C.F.R. § 2003.7.

19.    "The Panel shall meet at the call of the Chair. The Chair shall schedule meetings as may be necessary for the Panel to fulfill its functions in a timely manner." *Id.* § 5.3(a)(6).

20.    "The Executive Secretary and staff prepare each meeting's minutes, and distribute draft minutes to each member. The minutes include a record of the members present at the meeting and the result of each vote. At each Panel meeting, the Chair reads or references the previous meeting's draft minutes. At that time the minutes are corrected, as necessary, approved by the membership, and certified by the Chair. The approved minutes are maintained among the Panel's records." 32 C.F.R. § 2003.5(f).

21.    "When the Panel is required to make a decision or recommendation to resolve a matter before it, the Chair requests or accepts a motion for a vote." *Id.* § 2003.6(a).

22.    "In response to a motion, members may vote affirmatively, negatively, or abstain from voting. A motion passes when it receives a majority of affirmative votes of the members voting. In circumstances in which members abstain from voting, a Panel decision to reverse an

agency's classification decision requires the affirmative vote of at least a majority of the members present." *Id.* § 2003.6(d).

23.   ISCAP voted to declassify at least 316 documents in whole or in part between 20 January 2017 and 19 January 2021, inclusive.

24.   Upon information and belief, ISCAP held at least eleven meetings between 20 January 2017 and 19 January 2021, inclusive.

### *PART III: WHITE HOUSE SECURITY CLEARANCE IRREGULARITIES*

25.   On 23 March 2019, the House Committee on Oversight and Reform conducted a transcribed interview with Tricia Newbold ("Newbold"), the Adjudications Manager in the White House Personnel Security Office.

26.   Newbold stated that she and other career staffers had denied security clearances for twenty-five officials, including three "very senior" officials, only to see most of those recommendations overturned.

27.   For example, Newbold stated that in the case of one official, staff denied the security clearance request after a background investigation revealed "significant disqualifying factors, including foreign influence, outside activities . . . and personal conduct," but that Director of the White House Personnel Security Office Carl Kline overrode the denial.

28.    Newbold stated that in addition to senior officials, security clearances were also granted to contractors and other individuals in the Executive Office of the President, despite their having "a wide range of serious disqualifying issues involving foreign influence, conflicts of interest, concerning personal conduct, financial problems, drug use, and criminal conduct."

29.   Newbold stated that when she raised concerns to her superiors, they ignored those concerns.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## (CONSTRUCTIVE RECORDS DENIAL – 26-19482-F)

30.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1-28 set forth above.

31.     On 20 January 2026, NSC submitted to the Trump Library via email a FOIA request for "all minutes of meetings of the Interagency Security Classification Appeals Panel ("ISCAP") between 20 January 2017 and 19 January 2021, inclusive."

32.     NSC added, "Please process the responsive records but do not send us copies. Once you have completed your processing, please notify me so that we can make arrangements for someone to review them at an appropriate National Archives facility."

33.     On 28 January 2026, Legal Eagle, through undersigned counsel, instructed the Trump Library by email to add it as a co-requester to NSC's request.

34.     On 23 February 2026, the Trump Library acknowledged receipt of this request and assigned it Request No. 26-19482-F.

35.     On 23 February 2026, the Trump Library advised Plaintiffs that it had limited Request No. 26-19482-F to unclassified records.

36.     As of this writing, the Trump Library has not issued a final response to Plaintiffs' request.

37.     Plaintiffs have a legal right under FOIA to obtain the records they seek, and there is no legal basis for the denial by the Trump Library of said right.

## SECOND CAUSE OF ACTION

## (CONSTRUCTIVE RECORDS DENIAL – NW 90639)

38.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1-28 set forth above.

39.     On 18 February 2026, the Trump Library advised Plaintiffs that it had assigned Request No. NW 90639 to the request for classified records responsive to Request No. 26-19482-F.

40.     On 18 February 2026, the Trump Library stated that it located no responsive records.

41.     On 19 February 2026, Plaintiffs' undersigned counsel suggested that the Trump Library contact ISOO for guidance regarding the likely location of responsive records because "ISCAP wasn't just shut down for 4 years." The Trump Library replied that it "will reach out to someone at ISOO to see if they can provide any insight."

42.     On 23 February 2026, Plaintiffs' undersigned counsel asked the Trump Library to "confirm that the response for NW 90639 is no longer a final response" in light of the agreement to reopen the search. The Trump Library replied that "NW 90639 is still closed out because the classified search did not yield any responsive records."

43.     On 24 February 2026, Plaintiffs submitted an administrative appeal of the Trump Library's "no records" response.

44.     On 24 February 2026, NARA acknowledged receipt of this appeal and assigned it Appeal No. NGC26-027A.

45.     As of this writing, NARA has not issued a final response to Plaintiffs' appeal.

46.     Plaintiffs have a legal right under FOIA to obtain the records they seek, and there is no legal basis for the denial by the Trump Library of said right.

### THIRD CAUSE OF ACTION

### (CONSTRUCTIVE RECORDS DENIAL – 26-19456-F)

47.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1-28 set forth above.

48.     On 20 January 2026, NSC submitted to the Trump Library via email a FOIA request for "the administrative case files of all MDR appeals submitted to the Interagency Security Classification Appeals Panel ("ISCAP") between 20 January 2017 and 19 January 2021, inclusive."

49.     NSC added, "You may exclude any records which are only in a case file because they were the subject of the original MDR request being appealed; it is not necessary for you to reprocess those records for release. This is a request for records about the appeals *process*, not for the originally requested records themselves."

50.     NSC added, "Please process the responsive records but do not send us copies. Once you have completed your processing, please notify me so that we can make arrangements for someone to review them at an appropriate National Archives facility."

51.     On 28 January 2026, Legal Eagle, through undersigned counsel, instructed the Trump Library by email to add it as a co-requester to NSC's request.

52.     On 23 February 2026, the Trump Library acknowledged receipt of this request and assigned it Request No. 26-19456-F.

53.     On 23 February 2026, the Trump Library advised Plaintiffs that it had limited Request No. 26-19456-F to unclassified records.

54. As of this writing, the Trump Library has not issued a final response to Plaintiffs' request.

55. Plaintiffs have a legal right under FOIA to obtain the records they seek, and there is no legal basis for the denial by the Trump Library of said right.

## FOURTH CAUSE OF ACTION

### (CONSTRUCTIVE RECORDS DENIAL – NW 90638)

56. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-28 set forth above.

57. On 18 February 2026, the Trump Library advised Plaintiffs that it had assigned Request No. NW 90638 to the request for classified records responsive to Request No. 26-19456-F.

58. As of this writing, the Trump Library has not issued a final response to Plaintiffs' request.

59. Plaintiffs have a legal right under FOIA to obtain the records they seek, and there is no legal basis for the denial by the Trump Library of said right.

## FIFTH CAUSE OF ACTION

### (CONSTRUCTIVE RECORDS DENIAL – 26-20927-F)

60. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-28 set forth above.

61. On 20 January 2026, NSC submitted to the Trump Library via email a FOIA request for "all emails sent or received by Ms. Newbold between 2017 and 2019, inclusive, regarding specific instances in which she or another security professional recommended that a security clearance be denied and the recommendation was overruled."

62. NSC added, "Please process the responsive records but do not send us copies. Once you have completed your processing, please notify me so that we can make arrangements for someone to review them at an appropriate National Archives facility."

63. On 28 January 2026, Legal Eagle, through undersigned counsel, instructed the Trump Library by email to add it as a co-requester to NSC's request.

64. On 18 February 2026, the Trump Library acknowledged receipt of this request and assigned it Request No. 26-20927-F.

65. On 18 February 2026, the Trump Library advised Plaintiffs that it had limited Request No. 26-20927-F to unclassified records.

66. As of this writing, the Trump Library has not issued a final response to Plaintiffs' request.

67. Plaintiffs have a legal right under FOIA to obtain the records they seek, and there is no legal basis for the denial by the Trump Library of said right.

## SIXTH CAUSE OF ACTION

## (CONSTRUCTIVE RECORDS DENIAL – NW 90899)

68. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-28 set forth above.

69. On 18 February 2026, the Trump Library advised Plaintiffs that it had assigned Request No. NW 90899 to the request for classified records responsive to Request No. 26-20927-F.

70. As of this writing, the Trump Library has not issued a final response to Plaintiffs' request.

71.     Plaintiffs have a legal right under FOIA to obtain the records they seek, and there is no legal basis for the denial by the Trump Library of said right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Legal Eagle, LLC and National Security Counselors, Inc. pray that this Court:

(1)     Order the Donald J. Trump Presidential Library to make all responsive records available to Plaintiffs;

(2)     Order preliminary and permanent injunctive and/or declaratory relief as may be appropriate;

(3)     Award reasonable costs and attorneys' fees as provided in 5 U.S.C. § 552(a)(4)(E), 28 U.S.C. § 2412(d), or any other applicable law;

(4)     Expedite this action in every way pursuant to 28 U.S.C. § 1657(a); and

(5)     Grant such other relief as the Court may deem just and proper.

Date:   March 25, 2026

Respectfully submitted,

/s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
MD Bar #31832
National Security Counselors
1451 Rockville Pike
Suite 250
Rockville, MD  20852
501-301-4672
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiffs*

11